No. 86,431

JAMES P. GILLESPIE, as Executor of the WARREN BROWN
GILLESPIE ESTATE, and for WARREN BROWN GILLESPIE, *Plain-
tiff/Appellee*, and POLLY G. TOWNSEND REVOCABLE TRUST,
*Plaintiff/Appellant*, v. DOROTHEA WOFFORD SEYMOUR, as co-
trustee of the BROWN-GILLESPIE TRUST ESTATE, *et al.*,
*Defendants*.

(39 P.3d 61)

Opinion filed February 1, 2002.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of
Wichita, argued the cause, and *Jana D. Abbott*, of the same firm, was with him
on the brief for appellant.

*Nicholas S. Daily*, of Depew and Gillen, L.L.C., of Wichita, argued the cause
and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a post-settlement controversy, initially between
two sibling plaintiffs, Warren Brown Gillespie (Warren) and Polly

G. Townsend (Polly). With the death of the sibling plaintiffs in 1998, the controversy has become a battle between Warren's estate (Warren) administered by his son James Gillespie, executor, and the Polly G. Townsend Revocable Trust (Polly). Warren and Polly disagree on who is responsible for litigation expenses incurred in a contingent fee case resulting in a $2,250,000 settlement recovery. The district court ruled that the expenses should be shared equally and ordered the disputed funds held in escrow distributed to Warren's Estate. Polly, objecting to the sharing decision, appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

Polly advances the following issues in her appeal:

Whether the district court: (1) was an appropriate forum for determining the sibling dispute under Kansas Rules of Professional Conduct (KRPC) 1.5(e) (2001 Kan. Ct. R. Annot. 346), (2) erred in finding that the KRPC were, as a matter of law, incorporated into Polly's contingent fee agreement, (3) erred in finding that Warren and Polly reached an oral agreement to share litigation expenses on an equal basis in the event of recovery, and (4) erred in finding that Polly was responsible for attorney fees and expenses incurred in the bankruptcy litigation.

We reverse, holding that: (1) the district court, under the guise of a KRPC 1.5(e) fee dispute, was not the proper forum to resolve the controversy here, and (2) one client under KRPC 1.5 has no standing to test the reasonableness of another client's separate attorney fee contract. Our forum resolution negates the need to address the other issues raised by Polly.

The Gillespie family litigation has had an extensive history. See *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1991) (*Gillespie* I); 253 Kan. 169, 853 P.2d 692 (1993); 255 Kan. 774, 877 P.2d 409 (1994); 263 Kan. 650, 952 P.2d 1313 (1998) (*Gillespie* IV). The factual background of the family controversy is set forth in *Gillespie* I, 250 Kan. at 125-29. More recently, we found a lack of appellate jurisdiction in *Gillespie* IV, because of an improper and untimely interlocutory appeal involving the current dispute. 263 Kan. at 656-57. The other *Gillespie* appeals involved issues unrelated to the sibling controversy presented here.

## FACTS

Warren and Polly, as remainder beneficiaries, under a trust established by their grandfather in the mid-1950's, sought an accounting including punitive damages against co-trustees (and others). The litigation also concerned various breach of trust allegations. Warren and Polly were represented by Glenn Young and Jerry Bogle of the law firm Young, Bogle, McCausland, Wells, & Clark, P.A. (Young, Bogle), of Wichita. Each client entered into a separate and different contingent fee agreement with the firm.

The separate contingent fee agreements differed in two respects. First, Polly had crossed out and initialed the phrase, "but [Young, Bogle] shall be reimbursed for all out-of-pocket expenses incurred in the prosecution of said suit and claim." Second, Young, Bogle's contingent share of any recovery was 45% in Warren's agreement and 50% in Polly's.

On March 13, 1988, Polly signed her crossed-out contingency fee contract and mailed it back to Bogle. After receiving the modified contract, Bogle met with Warren and Warren's son James. It was agreed that Warren would enter into a separate contract providing a contingent fee percentage of 45% if the case was tried and appealed. Warren requested a lower fee scale in return for his agreeing to advance the expenses of the lawsuit. During litigation, Warren paid $480,521.09, the total of all costs and expenses in the state litigation and later bankruptcy proceeding. The commitment to advance expenses was not in Warren's fee agreement; however, the agreement provided that Warren would reimburse expenses in the event there was no recovery. Neither fee agreement specified how any recovery would be divided between the two siblings. Warren signed his agreement on April 11, 1988.

The damage claim against the co-trustees and related parties for investment losses incurred by the trust was eventually tried. Warren and Polly were awarded judgment in December 1990 in excess of $4,000,000. Liability and the compensatory damage awards were upheld in *Gillespie* I. 250 Kan. at 128. The individual defendants filed bankruptcy. Young, Bogle secured an oral agreement from Warren to pursue recovery of the judgment in the bankruptcy lit-

igation on an hourly basis. Apparently, Young, Bogle made no separate agreement with Polly regarding the bankruptcy. The parties settled the litigation with the underlying defendants for $2,250,000. Young, Bogle contended that its bankruptcy fees became expenses of litigation under the contingent fee agreements. However, the bankruptcy fees were not deducted from the recovery as expenses before calculating Young, Bogle's contingent fee.

Young, Bogle sought to divide the settlement proceeds between Warren and Polly. A dispute arose concerning the payment of litigation expenses. Polly observed that her fee agreement contained no provision for reimbursement of out-of-pocket expenses incurred by Young, Bogle. Young, Bogle, on behalf of Warren, asserted Polly had agreed to share one-half of the "out-of-pocket" litigation expenses. The amounts not in controversy were distributed. Polly received $395,243; however, she claims she is entitled to $562,500 (50% of $1,125,000). Young, Bogle holds the difference, $167,257, and interest, in escrow. Warren claims that the $167,257 is his as reimbursement of Polly's share of the litigation costs and expenses that he paid. (The record is silent on why Warren's claim is only for $167,257, as one-half of the total expenses, $480,521.09, is $240,260.54.)

Warren, with Young, Bogle as his counsel, filed a motion under KRPC 1.5(d) (2001 Kan. Ct. R. Annot. 345), requesting that the district court divide the litigation expenses between himself and Polly. It appears that the motion should have referenced KRPC 1.5(e). Warren alleged that Polly had orally agreed that she would share the litigation expenses equally with him in the event of an ultimate recovery (although she would not be responsible for any expenses if there was no recovery.) Polly, now represented by a different firm, responded to the motion by alleging: (1) she had not agreed to share responsibility for any litigation expenses; (2) a KRPC 1.5(d) motion was not proper for resolving her alleged fee dispute; (3) the controversy did not involve a fee dispute between an attorney and client, but rather an alleged oral contract between two clients; (4) she had not requested the district court under KRPC 1.5(e) to review her fee contract with Young, Bogle; (5) Warren's motion did not allege any fee dispute between her and Young,

Bogle; (6) Young, Bogle had a conflict of interest in representing Warren because his position was now adverse to hers; and (7) a proper forum for Warren's oral contract claim is a separate lawsuit by Warren against her.

Over Polly's objection, Young, Bogle moved for, and the district court approved, withdrawal as Polly's counsel due to a conflict of interest. Polly had contended that Young, Bogle should have withdrawn from representing either party, as the firm now had a conflict of interest in representing Warren against her, a former client, under KRPC 1.7 (2001 Kan. Ct. R. Annot. 354).

Sedgwick County District Judge Paul Buchanan (1) withheld ruling on Polly's motion to disqualify Young, Bogle, (2) decided that Warren's KRPC 1.5(d) motion was proper, (3) held that the KRPC was incorporated as part of the contingent fee agreement between Polly and Young, Bogle, and (4) decided Polly was required to pay litigation costs and expenses, which should be deducted before the contingent fee is calculated. Judge Buchanan did not adjudicate the reasonableness of the fees and expenses or decide what portion was Polly's responsibility.

The judgment was certified under K.S.A. 60-254(b), and Polly appealed. Following dismissal of Polly's appeal for lack of appellate jurisdiction (*Gillespie* IV), the parties stipulated in a prehearing order to the issues which remained for determination. The stipulated issues were: (1) the reasonableness of litigation expenses; (2) the existence of an expense sharing agreement between Warren and Polly, and (3) which expenses, if any, should be paid by Polly. The remaining issues stemming from Judge Buchanan's previous ruling were preserved for appeal. The issues set out in the prehearing order were tried in an evidentiary hearing before Judge Keith Anderson in December 1999.

Judge Anderson addressed the state court litigation expenses and bankruptcy fees and expenses separately. He ruled that Polly was liable for one-half of the state court litigation expenses on alternative grounds. First, the KRPC was incorporated into Polly's fee contract and required the payment of expenses of litigation. Second, an oral agreement existed between Warren and Polly to share equally the expenses of litigation if there was a recovery. Judge

Anderson concluded that the bankruptcy litigation was not covered by Polly's contingent fee agreement but that Polly was responsible for one-half of the attorney fees and expenses as a "matter of fairness and equity."

## DISCUSSION

Polly has consistently contended throughout this litigation that under Warren's KPRC 1.5(d) motion, the district court was not a proper forum to resolve this sibling dispute. We agree. This issue involves a question of law, over which we have unlimited review. See *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997).

The Model Rules of Professional Conduct (formerly known as MRPC; now KRPC), were adopted in Kansas effective March 1, 1988, just days before the execution of Polly's contingency fee contract. See *Ryder v. Farmland Mut. Ins. Co.*, 248 Kan. 352, 361, 807 P.2d 109 (1991).

KRPC 1.5(e) says:

"Upon application by the client, all fee contracts shall be subject to review and approval by the appropriate court having jurisdiction of the matter and the court shall have the authority to determine whether the contract is reasonable. If the court finds the contract is not reasonable, it shall set and allow a reasonable fee." (2001 Kan. Ct. R. Annot. 346.)

Here, a dispute arose between Warren and Polly, *two of Young, Bogle clients*, over the division of litigation expenses incurred in the settlement recovery of $2,250,000 in the underlying lawsuit. The dispute was not a fee contract dispute between attorney and client.

*Ryder*, 248 Kan. 352, controls. In *Ryder*, we noted that KRPC 1.5(e) was drafted to provide *the client* with a mechanism for review of a disputed fee contract. 248 Kan. at 366. *Ryder* involved a dispute between two sets of attorneys. A California law firm, Fisher, Weathers, and Geeting (FW&G), referred a personal injury law suit to a Kansas law firm, Wallace, Saunders, Austin, Brown, and Enochs (Wallace, Saunders). The case resulted in a $2,500,000 settlement. Wallace, Saunders handled the case based on a one-third contingency fee. FW&G contended that it was entitled to a

referral fee out of that contingency. Wallace, Saunders denied that any referral fee was owed.

Wallace, Saunders filed a post-settlement motion in the district court seeking to have the court approve its attorney fees and to resolve the dispute. FW&G filed a motion to dismiss, arguing that the controversy over the referral fee was limited to the two law firms and that the court lacked personal jurisdiction over FW&G. FW&G also argued that the parties to the personal injury lawsuit were not the real parties in interest in the dispute over the division of the one-third contingent fee. The district court held that FW&G was not entitled to a referral fee.

We agreed with FW&G's real-party-in-interest argument. 248 Kan. at 354. We noted that Ryder, the plaintiff in the personal injury suit, did not dispute the referral fee. In addition, Ryder did not have the substantive right to enforce the action, and he had no legal interest in the outcome of the attorney fee dispute. We concluded that the real parties in interest were the contesting law firms, not the parties to the suit. 248 Kan. at 366. The case was reversed and remanded with directions to dismiss. 248 Kan. at 368.

In contrast to *Ryder*, Warren reasons that the dispute here is between the parties and that it also involves the interpretation of their fee agreements. Thus, he contends that the district court retained subject matter jurisdiction and personal jurisdiction over the parties.

Polly points out that she has no dispute with Young, Bogle concerning her contingency fee contract. However, this assertion is puzzling, since Polly admits that Young, Bogle has refused to distribute proceeds to which she feels she is entitled under the contingent fee contract.

What we find persuasive is Polly's consistent multiple assertions that (1) Warren cannot, under 1.5(e), test the reasonableness of her fee contract with Young, Bogle; (2) she has made no such request; (3) the alleged oral agreement between Warren and Polly is not part of either contingent fee contract and, thus, was not properly reviewed under the KRPC 1.5(e) format; and (4) Warren's initial KRPC 1.5 motion triggering this litigation alleged no dispute between Polly and Young, Bogle.

Polly argues that under *Ryder*, KRPC 1.5 has no application to a dispute arising out of an alleged oral agreement between Warren and Polly. We agree. She contends that the proper forum for resolving the oral agreement dispute would be a separate action by Warren against Polly.

Warren, in his brief, focuses on what he believes this case is about, stating; "At this point this is a battle between two clients about whether the expenses of litigation which resulted in a substantial benefit to both should be shared, or whether they should all be borne by one party."

KRPC 1.5(e) does not provide a judicial battlefield for resolving a controversy between successful plaintiffs over an alleged oral agreement to share in paying litigation expenses. The district court had no authority under a KRPC 1.5 motion filed by Warren to address the issue of an alleged oral agreement between Warren and Polly.

Polly did not apply to the district court under KRPC 1.5(e) for a determination of the reasonableness of her fee contract with Young and Bogle.

The motion that initiated this litigation filed by Young, Bogle, the firm that had represented both Polly and Warren, opened with the following:

"COMES NOW *Warren Brown Gillespie* and moves the Court for a determination of the division of expenses between plaintiffs Warren Brown Gillespie and Polly Gillespie Townsend in the subject action, *pursuant to [Kansas] Rules of Professional Conduct Rule 1.5(d)*." (Emphasis added.)

We said in *Ryder*,

"[K]RPC 1.5(e) states: 'Upon application *by the client*, all fee contracts shall be subject to review and approval by the appropriate court having jurisdiction of the matter and the court shall have the authority to determine whether the contract is reasonable. (Emphasis added.)

"[K]RPC 1.5(e) was drafted to provide the *client* a mechanism for review of a disputed fee contract." 248 Kan. at 366.

Warren would have standing as *a client* to apply for a district court determination under 1.5(e) to test whether *his* Young, Bogle contract is "reasonable." He had no standing under a KRPC 1.5(e) application either to test the reasonableness of Polly's separate fee

contract or to seek resolution of his oral contract dispute with Polly. See K.S.A. 60-217(a).

We reverse and set aside the judgment of the district court.

ABBOTT, J., and DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, and GARY W. RULON, Chief Judge, assigned.