No. 96,250

POLLY T. COOKE, TRUSTEE OF THE POLLY G. TOWNSEND REVOCABLE TRUST, *Appellant*, v. JAMES P. GILLESPIE, EXECUTOR OF THE WARREN B. GILLESPIE ESTATE, *Appellee*.

(176 P.3d 144)

Opinion filed February 1, 2008.

*Jeffery L. Carmichael,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the briefs for appellant.

*Stephen M. Kerwick,* of Foulston Siefkin LLP, of Wichita, argued the cause, and *Dennis L. Gillen,* of Depew Gillen Rathbun & McInteer, L.C., of Wichita, was with him on the brief for appellee.

The opinion of the court was delivered by

Nuss, J.: This appeal is the latest in a dispute which has spawned over 20 years of litigation, five prior trips to this court, three to our Court of Appeals, and 5 years of litigation in the United States Bankruptcy Court. The current disagreement arises out of an interpleader action to determine distribution of funds that had been withheld from these parties' lawsuit settlement proceeds in order to pay litigation expenses. Upon reversal and remand from the Court of Appeals, *Cooke v. Gillespie*, No. 91,078, unpublished opinion filed December 10, 2004, the district court ultimately ordered an equitable distribution: the Townsend Trust was to be paid approximately $33,000 and the Gillespie Estate just over $223,000. The Townsend Trustee (Cooke) appealed, and the Gillespie Executor (Gillespie) cross-appealed. We transferred the case from the Court of Appeals on our own motion pursuant to K.S.A. 20-3018(c).

Cooke argues that Gillespie's claims to the funds under quantum meruit, unjust enrichment, or a common fund theory are barred by the statute of limitations because the claims were raised for the first time 7 years after the settlement funds were to be disbursed.

Gillespie denies that the statute of limitations bars his recovery but, if so, argues that it similarly bars Cooke's recovery.

Our holding is based upon a related consideration: Cooke's statute of limitations argument was not preserved for appeal. Accordingly, the decision of the district court is affirmed.

## FACTS

These factions have been involved in disputes since 1987. See *Seymour v. Thornton*, 79 F.3d 980 (10th Cir. 1996); *Gillespie v. Seymour*, 272 Kan. 1387, 39 P.3d 61 (2002); *Gillespie v. Seymour*, 263 Kan. 650, 952 P.2d 1313 (1998); *Gillespie v. Seymour*, 255 Kan. 774, 877 P.2d 409 (1994); *Gillespie v. Seymour*, 253 Kan. 169, 853 P.2d 692 (1993); *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1991); *Cooke v. Gillespie*, No. 91,078, unpublished opinion filed December 10, 2004; *Gillespie v. Seymour*, 19 Kan. App. 2d 754, 876 P.2d 193, *rev. denied* 255 Kan. 1001 (1994); *Gillespie v. Seymour*, 14 Kan. App. 2d 563, 796 P.2d 1060 (1990).

A recapitulation of certain facts is necessary to understand the present controversy. Many of the facts, which are undisputed, are taken from the Court of Appeals' unpublished opinion in *Cooke v. Gillespie*, and from the district court's decision on remand: the nunc pro tunc journal entry of judgment dated February 28, 2006.

In August 1987, Polly Gillespie Townsend sought an accounting of the family trust when certain suspicions arose as to the trustees' management. Originally, an attorney represented Polly on an hourly basis. Later, the other trust beneficiaries, her brother Warren Gillespie and their mother Pauline Gillespie, joined as additional plaintiffs. Shortly after the filing of the litigation, Pauline died and her estate was substituted.

After Pauline's death, an attorney sent a proposed joint contingency fee agreement to Polly which provided for a sliding scale of rates ranging from 35% to 50% based on the stage of litigation in which the case was won. The proposal stated that if there was no recovery, there would be no compensation for services except for the out-of-pocket expenses incurred. Polly signed the agreement after crossing out the provision concerning payment of out-of-pocket expenses in the event of no recovery. The contract did not address recovery of out-of-pocket expenses in the event the litigation was successful.

Upon receiving this contract, the attorney contacted Warren and his son James Gillespie concerning fees and expenses. This consultation resulted in a separate fee agreement between Warren and the attorney. According to this agreement, Warren would advance payment for litigation expenses as they were incurred. However, if the litigation was successful, Warren would receive a 5% reduction on his portion of the contingency fee.

Ultimately, after numerous trials and appeals, the case was resolved in favor of the plaintiffs: the Townsends and the Gillespies. Then one of the defendants filed for bankruptcy, at which time Warren and James met with the attorneys and agreed to pay for work on the bankruptcy case on an hourly basis. Polly was not involved in these discussions and did not sign any further agreements.

Prior to the resolution of the bankruptcy case, both Polly and Warren died. Their children, James (Gillespie) and Polly Townsend Cooke (Cooke), were substituted and later became, in their representative capacities, the present parties to this appeal.

In 1995, the case settled and Gillespie and Cooke were awarded approximately $2,250,000, which was split in half between them. Gillespie had to pay 45% out of his half to the attorney and Cooke had to pay 50% of her share to the attorney. Later that year a dispute arose between Gillespie and Cooke over the responsibility for the litigation expenses. A little over $167,000 of Cooke's settlement was set aside in a trust fund pending resolution of these issues. This dispute concerned not only out-of-pocket expenses incurred but also attorney fees incurred due to the bankruptcy litigation.

Gillespie filed a motion asking the court to resolve the dispute under Kansas Rules of Professional Conduct 1.5 (2007 Kan. Ct. R. Annot. 428). District Court Judge Paul Buchanan ruled in favor of Gillespie, *i.e.*, the expenses should be split. After appeal by Cooke, we reversed and remanded on jurisdictional grounds. *Gillespie v. Seymour*, 263 Kan. 650. On remand, Judge Keith Anderson ruled in favor of Gillespie: The expenses should be split.

After another appeal by Cooke, this court decided, on February 1, 2002, that Gillespie "had no standing under a KRPC 1.5(e) application either to test the reasonableness of Polly [Cooke's] separate fee contract, or to seek a resolution of his oral contract dispute with Polly." *Gillespie v. Seymour*, 272 Kan. at 1394-95. The case was reversed, and the decision of the district court was set aside.

Within 3 weeks after our decision, the Wichita law firm of Young, Bogle, McCausland, Wells & Clark, P.A., (Young, Bogle) the original attorneys for both Cooke and Gillespie in the underlying litigation, filed a petition for interpleader, asking the court to "issue an order determining which of the parties herein is entitled to said trust monies. . . ."

On the motion of Cooke, these funds were paid into court and, subsequently, the parties agreed Young, Bogle could be dismissed. Gillespie lay claim to the funds under a number of theories, including an oral contract, an interpretation of the written contract,

quantum meruit, unjust enrichment, and the common fund theory. Gillespie's trial brief identified one of the issues as follows: Are either or both sides of the family's claims against the other side barred by the applicable statutes of limitations?

Cooke then filed a motion for summary judgment, contending that any claim that Gillespie might have to the funds was barred by the statute of limitations. Gillespie filed a cross-motion, arguing that if his claims were barred, Cooke's claims would be barred by the statute of limitations as well. Both of these dispositive motions were heard and eventually denied by a third district court judge, David Kennedy, on January 9, 2003.

Consistent with procedures of the Sedgwick County District Court, the interpleader was then assigned to another judge, Rebecca Pilshaw, for trial. After a bench trial, on June 18, 2003, Judge Pilshaw directly rejected Gillespie's claims based upon a verbal agreement and quantum meruit. Although Cooke had raised the statute of limitations in her motion for summary judgment before Judge Kennedy, and again at trial before Judge Pilshaw, the latter judge did not rule on that issue. She stated: "I do not need under that ruling to reach the issues regarding the statutes of limitations, and I'm not going to rule on those matters."

Gillespie appealed to the Court of Appeals. Among other grounds, he asserted in his brief that Judge Pilshaw erred "in failing to address Gillespie's common fund theory for recovery." By contrast, despite Judge Pilshaw's similar failure to address several of Cooke's defenses, including statute of limitations, Cooke failed to file a cross-appeal. Moreover, Cooke not only failed to raise the statute of limitations defense in her response brief but also argued that the issue was not one before the Court of Appeals, stating:

"Finally, because the case was resolved on other issues, the trial court did not reach the statute of limitations argument. [Citation omitted.] Therefore, the issues remaining from the pretrial conference order and Appellant's trial brief are equitable claims based on the doctrines of common fund and *quantum meruit*."

On December 10, 2004, the Court of Appeals found that under the common fund theory, as well as under quantum meruit or an unjust enrichment analysis, Cooke should be responsible for pay-

ment of an equitable share of the litigation expenses. *Cooke v. Gillespie*, slip op. at 6. It reversed and remanded for "the determination of an equitable division of the expenses of litigation and a distribution of the funds held by the clerk of the court." Slip op. at 6. As Cooke admits, the opinion makes no mention of a statute of limitations issue.

Cooke then filed a petition for review of the Court of Appeals' decision with this court. In it she argued, among other things, for application of the statute of limitations against Gillespie's claims based upon the common fund theory, quantum meruit, and unjust enrichment. In Gillespie's response, he noted that Judge Pilshaw did not reach the statute of limitations issue, that no cross-appeal was taken from her action, and "naturally, the Court of Appeals did not address that nonissue." Accordingly, Gillespie argued that the statute of limitations issue was inappropriate for review by the Supreme Court.

This court denied Cooke's petition for review on May 3, 2005, and the mandate was issued on May 9.

On remand, the case was assigned to Judge Benjamin Burgess. Cooke resurrected her statute of limitations theory and again filed a motion for summary judgment, again claiming that Gillespie's claims were time-barred. Gillespie again filed a cross-motion for summary judgment, contending that if his claims were barred by the statute of limitations, Cooke's were likewise barred.

Judge Burgess found that Gillespie's quantum meruit, unjust enrichment, and common fund claims were a continuation of the equitable claims made in the previous actions. He held that since the previous action was dismissed by the Supreme Court on jurisdictional grounds in 2002, these claims were "saved" under the provisions of the saving statute, K.S.A. 60-518. Accordingly, he found that as a matter of equity, because the parties shared equally in the initial claim, they were entitled to an equal share of the proceeds from its settlement, *e.g.*, an equitable division of litigation expenses.

Upon Cooke's appeal of Judge Burgess' decision, we transferred to this court.

## ANALYSIS

Issue: *Cooke's statute of limitations argument was not preserved for appeal.*

Cooke argues that Judge Burgess erred in denying her motion for summary judgment because Gillespie's claims are barred by the statute of limitations. Specifically, Cooke argues that the statute of limitations began running in 1995 when Gillespie knew that there was a dispute over who would pay the litigation expenses.

Cooke's brief alleges that the issue was not addressed by the district court in 2003 or by the Court of Appeals in reviewing that decision in 2004, but that it is now ripe for determination by the Supreme Court:

"Appellant [Cooke] had previously raised and properly preserved the issue of the statute of limitations throughout the proceedings. However, the issue of the statute of limitations had not been directly addressed previously because Appellant [Cooke] had prevailed in the trial that led to that appeal. *The statute of limitations was never addressed by the district court in this proceeding, and therefore it was also not addressed by the appellate court in the decision issued December 10, 2004. . . .*

". . . Therefore, the issue of the statute of limitations is now squarely before the court and is ripe for determination." (Emphasis added.)

Gillespie responds that the district court correctly granted his motion for summary judgment. He argues that the interpleader action is a derivative of the original action and that we should look to the district court's ongoing jurisdiction over the proceeds of the original settlement. He also argues that his claims are preserved by the saving statute, K.S.A. 60-518.

There is no disagreement over the material facts. Accordingly, we may review the district court's denial of Cooke's motion for summary judgment de novo. See *Botkin v. Security State Bank,* 281 Kan. 243, Syl. ¶ 1, 130 P.3d 92 (2006).

Our analysis begins, however, with a reaffirmation of the statement that "[i]n Kansas, 'piecemeal appeals are frowned upon.'" *State v. Neer,* 247 Kan. 137, 140, 795 P.2d 362 (1990); see *Connell v. State Highway Commission,* 192 Kan. 371, 374, 388 P.2d 637 (1964). K.S.A. 60-2103(h), which deals with cross-appeals, adopts this principle, stating:

"When notice of appeal has been served in a case and the appellee desires to have a review of *rulings and decisions of which such appellee complains*, the appellee shall, within 20 days after the notice of appeal has been served upon such appellee and filed with the clerk of the trial court, give notice of such appellee's cross-appeal." (Emphasis added).

The purpose of such a provision is to conserve time and expense and eliminate duplication in abstracts, briefs, and opinions. *Fields v. Anderson Cattle Co., Inc.*, 193 Kan. 569, 570, 396 P.2d 284 (1964). Accordingly, the *Fields* court affirmed that a second and direct appeal—by the original appellee—cannot be used as a substitute for a cross-appeal as directed by the statute. 193 Kan. at 570.

We have clearly held that before an appellee may present adverse rulings to the appellate court it must file a cross-appeal. If the appellee does not, we have held that the issue is not properly before the court and may not be considered. See, *e.g.*, *Butler Co. R.W.D. No. 8 v. Yates*, 275 Kan. 291, 299, 64 P.3d 357 (2003); *Inland Industries, Inc. v. Teamsters and Chauffeurs Local Union*, 209 Kan. 349, 355, 496 P.2d 1327 (1972); *Reinecker v. Board of Trustees*, 198 Kan. 715, 722, 426 P.2d 44 (1967); *James v. City of Pittsburg*, 195 Kan. 462, 463, 407 P.2d 503 (1965).

As noted previously, Gillespie's response to Cooke's petition for review of the Court of Appeals' December 2004 decision briefly argued that Cooke's statute of limitations argument was inappropriate for review because Cooke had not cross-appealed from Judge Pilshaw's failure to reach it, and the Court of Appeals consequently did not address this "nonissue." More basically, we observe that Cooke failed to cross-appeal an earlier, and clearly adverse, ruling: Judge Kennedy's denial of her summary judgment motion that was based upon the statute of limitations. We therefore disagree with Cooke's assertion that the issue had not been directly addressed previously and that she properly preserved the issue throughout the proceedings. Because of Cooke's failure to cross-appeal, under this court's past interpretations of K.S.A. 60-2103(h), the statute of limitations issue could not have been, and indeed was not, considered by the Court of Appeals in its December 2004 opinion.

We therefore must also disagree with Cooke's contention that the issue of the statute of limitations is now squarely before this court and is ripe for determination. The issue is long past the point of our consideration.

The case of *James v. City of Pittsburg*, 195 Kan. 462, is on point. There, the plaintiffs were individual owners of a majority of the tracts of land lying within an area sought to be annexed by the city. They challenged the validity of the annexation ordinance. After trial, the trial court entered judgment in favor of the defendants city and its commissioners.

On plaintiffs' appeal, the city argued as a threshold matter that plaintiffs were not the proper parties. We observed that the city first raised this argument in a motion to dismiss before the trial court; that court denied the motion. The city's motion was renewed at the conclusion of plaintiffs' evidence; the trial court again denied the motion. We observed that the city had filed no cross-appeal from either ruling.

After quoting K.S.A. 60-2103(h), this court noted that a similar predecessor statute, G.S. 1949, 60-3314, had been construed by this court as requiring an appellee to file a cross-appeal before that appellee can present adverse rulings for review. We held: "Inasmuch as the city gave no notice of cross-appeal, as provided by statute, its contention, as we have hereinbefore stated, is not properly before us and may not be considered." 195 Kan. at 463.

The adverse rulings in *James* which the city fatally failed to cross-appeal were improper-party-based motions to dismiss, denied both before and during trial. Here, the adverse ruling which Cooke fatally failed to cross-appeal was a statute-of-limitations-based summary judgment motion denied before trial.

Of similar ilk is *Scammahorn v. Gibraltar Savings & Loan Ass'n.*, 197 Kan. 410, 416 P.2d 771 (1966). There, the district court overruled the workers compensation claimant's motion to dismiss. It then heard on the merits the respondent employer's appeal from the director's decision for claimant, which involved reviewing the transcript of the proceedings conducted before the director and then making an independent adjudication of the facts and law. After this de novo determination, the district court affirmed the

director's award for claimant, and the respondent employer appealed the award to the Supreme Court. The claimant filed no cross-appeal from the denial of his motion to dismiss but nevertheless attempted to raise the argument on appeal. This court, citing *James* and K.S.A. 60-2103(h), held that the claimant's failure to cross-appeal from the district court's denial of his motion to dismiss precluded determination of the propriety of the district court's action on this issue. 197 Kan. at 413.

The case of *Chavez v. Markham*, 19 Kan. App. 2d 702, 875 P.2d 997 (1994), *aff'd* 256 Kan. 859, 889 P.2d 122 (1995), stands for this same basic proposition, although the facts are somewhat different. There, on competing dispositive motions, the district court granted summary judgment for plaintiff Chavez on one ground but denied it on two others. Markham appealed, and Chavez tried to also raise his two rejected grounds as support. Citing *James*, the Court of Appeals held that because Chavez failed to file a cross-appeal on these two grounds, the appellate court was barred from considering them. 19 Kan. App. 2d at 709.

Even if the *James* rationale did not bar Cooke's statute of limitations argument because of her failure to formally cross-appeal from Judge *Kennedy's* adverse ruling, we further hold that the issue is barred because of Cooke's later failure to otherwise bring that issue from Judge *Pilshaw* to the Court of Appeals for consideration. Specifically, her appellee brief failed to raise statute of limitations as an alternate—and unaddressed, not rejected—rationale for affirming Judge Pilshaw's holding, although such a practice apparently was approved in *Ellis v. State Farm Mut. Auto. Ins. Co.*, 249 Kan. 599, 822 P.2d 35 (1991).

In *Ellis*, this court acknowledged that appellee State Farm did not raise the issue of res judicata in a cross-appeal to the Court of Appeals but rather raised it in its appellee brief. It also acknowledged that State Farm asserted that "the issue of res judicata was properly before the Court of Appeals because an appellee may urge any matter for affirmance of a judgment, even though the argument may involve an attack on the reasoning employed by the lower court, or add new reasons that the lower court ignored in reaching the judgment." 249 Kan. at 604. Although the *Ellis* court's

precise path to its conclusion is not clear, it eventually held that res judicata barred appellant's claim and affirmed the Court of Appeals' res judicata disposition. 249 Kan. at 604-05.

Cooke is certainly a less sympathetic party than the appellees in these cases. The city in *James*, the workers compensation claimant in *Scammahorn*, and the plaintiff in *Chavez*, albeit without cross-appeals, at least attempted to raise their adverse rulings to the appellate court so the issues could be addressed. Likewise, State Farm in *Ellis* at least raised the issue—unaddressed, not necessarily adversely ruled upon, by the district court—so it could potentially be addressed by the appellate court. Here, Cooke made no attempt to raise her statute of limitations argument to the Court of Appeals in 2004 for consideration. We have held that an issue not briefed is deemed waived or abandoned; similarly, a point raised only incidentally in a brief but not argued there is deemed abandoned. *City of Roeland Park v. Jasan Trust*, 281 Kan. 668, Syl. ¶ 3, 132 P.3d 943 (2006); *McGinley v. Bank of America, N.A.*, 279 Kan. 426, Syl. ¶ 4, 109 P.3d 1146 (2005). Consistent with this case law, we must consider Cooke's statute of limitations argument to have been waived and abandoned at the Court of Appeals level.

In short, Cooke's failure to raise her statute of limitations argument to the Court of Appeals in 2004 has resulted in these recent piecemeal appeals on this issue, a practice frowned upon in Kansas. Moreover, once the Court of Appeals issued its opinion—to distribute the funds equitably—and once we denied Cooke's petition for review, the Court of Appeals' mandate was issued and Judge Burgess ultimately followed it, as he was required to do, pursuant to K.S.A. 60-2106(c) (mandate "shall be controlling in the conduct of any further proceedings necessary in the district court."). The statute of limitations ceased being an issue in the case well before Judge Burgess' 2006 decision from which Cooke now appeals.

Affirmed.

JOHNSON, J., concurring: I agree with the well-reasoned majority opinion. I write separately only to clarify that, in my view, Judge Burgess should have simply dismissed Cooke's motion for summary

judgment as being beyond the district court's authority upon remand.

As the majority notes, K.S.A. 60-2106(c) codifies the principle that an appellate court's "mandate and opinion . . . shall be controlling in the conduct of any further proceedings necessary in the district court." Slip op. at 12. Here, the Court of Appeals gave the district court clear and explicit directions when it stated: "This matter is reversed and remanded to the district court for the determination of an equitable division of the expenses of litigation and a distribution of the funds held by the clerk of the court." Slip op. at 6, *Cooke v. Gillespie*, No. 91,078, unpublished opinion filed December 10, 2004. That directive did not authorize the district court to revisit the merits of the case by entertaining a motion for summary judgment and clearly precluded consideration of the statute of limitations upon remand.

BEIER, J., joins in the foregoing concurring opinion.