(197 P.3d 882)
No. 98,996

HURST ENTERPRISES, LLC, d/b/a MR. PAYROLL CHECK CASHING, *Appellant,* v. BRYAN CRAWFORD, an individual, and CACTUS ROOFING, LLC, *Appellees.*

Opinion filed December 19, 2008.

*Nathan A. McCaffrey,* of Yoxall, Antrim, Yoxall, Fitzgerald & McCaffrey, LLP, of Liberal, for appellant.

No appearance by appellees.

Before MCANANY, P.J., GREEN and BUSER, JJ.

GREEN, J.: Hurst Enterprises, LLC, d/b/a Mr. Payroll Check Cashing, (Hurst) appeals from the trial court's judgment applying the formula under K.S.A. 84-3-302(d) to limit Hurst's recovery as a holder in due course against Bryan Crawford and Cactus Roofing, LLC (Cactus). Hurst argues that the trial court erred in applying a setoff under K.S.A. 84-3-302(d). We agree. K.S.A. 84-3-302(d) does not authorize a trial court to reduce the award to a holder in due course when the holder in due course has paid the full consideration for a check to the payee. As a result, we reverse and remand to the trial court with instructions to enter a judgment against Crawford and Cactus and in favor of Hurst for $4,768.47.

On September 24, 2005, Cactus issued a check to "Espino Roofing and/or Tomas Hernandez" for $4,768.47 for roofing work that Hernandez and his roofing crew had performed for Cactus. That morning, Hernandez cashed the check at Mr. Payroll in Liberal. Hernandez had previously cashed three other checks from Cactus at Mr. Payroll. All three of the checks had cleared the bank without any problems. Mr. Payroll paid Hernandez the amount of the check less a 1 percent check cashing fee of $47.68. Mr. Payroll deposited

the check into its account at Bank of the Panhandle in Guymon, Oklahoma.

Approximately 1 day after issuing the check to Hernandez, Bryan Crawford, the operator of Cactus, received a call that there were moisture leaks on the project on which Hernandez had worked. Crawford discovered that the work performed by Hernandez and his roofing crew had not been adequately completed. After unsuccessfully trying to contact Hernandez, Crawford placed a stop payment on the check he had written to Hernandez. Cactus had to spend approximately $4,500 repairing the work done by Hernandez and his roofing crew.

Mr. Payroll later received the check back from its bank with notification that a stop payment had been issued. Anica Slater, the manager of Mr. Payroll, called Cactus' bank and discovered that the stop payment had been issued 3 days after Hernandez had cashed the check at Mr. Payroll.

In April 2006, Hurst sued the appellees for $4,768.47 plus interest. Hurst alleged that it was entitled to payment because it was a holder in due course of the check it had received from Hernandez. The trial court determined that Hurst had met the statutory and factual requirements to be a holder in due course under K.S.A. 84-3-302. Nevertheless, the trial court determined that the appellees were entitled to a set-off under K.S.A. 84-3-302(d) because of the partial performance by Hernandez and his roofing crew. Based on Crawford's testimony that he had spent $4,500 to repair the roofing work, the trial court found that the value of the partial performance by Hernandez and his roofing crew was $268.47. Using the set-off formula under K.S.A. 84-3-302(d), the trial court determined that Hurst was entitled to recover the amount of $267.03 plus court costs.

On appeal, Hurst argues that the trial court erred in applying a setoff under K.S.A. 84-3-302(d). Importantly, Cactus has not appealed the trial court's ruling that Hurst was a holder in due course. "Before an appellee may present adverse rulings to the appellate court it must file a cross-appeal. If the appellee does not, the rulings are not properly before the appellate court and may not be considered." *Cooke v. Gillespie*, 285 Kan. 748, Syl. ¶ 2, 176 P.3d

144 (2008). Moreover, neither party has challenged the trial court's determination that Hurst was a holder in due course. Cactus has not even filed an appellate brief in this case. As a result, the trial court's ruling that Hurst was a holder in due course is not subject to appellate review.

Moreover, the record in this case supports the trial court's determination that Hurst was a holder in due course. To be a holder in due course under K.S.A. 84-3-302(a), a holder must take the instrument according to the following conditions:

"(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

"(2) the holder took the instrument (A) for value, (B) in good faith, (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (D) without notice that the instrument contains an unauthorized signature or has been altered, (E) without notice of any claim to the instrument described in K.S.A. 84-3-306, and (F) without notice that any party has a defense or claim in recoupment described in K.S.A. 84-3-305(a)."

The record in this case establishes that Hurst took the check for value; in good faith; and without any notice that it was overdue, had been dishonored, or that there was an uncured default or that there were any other defenses. Hurst paid Hernandez $4,720.69 for the check, which represented $4,768.47 less the 1 percent check cashing fee of $47.68. When Hurst gave Hernandez value for the check, there was nothing to indicate that the check would be dishonored. In fact, Hurst had previously cashed three other checks issued by Cactus to Hernandez. All three of those checks had cleared the bank without any problems. When Hurst gave Hernandez value for the check at issue in this case, Cactus had not yet placed a stop payment order on the check. Hurst had no knowledge that Hernandez had failed to adequately perform the services for which the check was written. Based on the evidence presented at trial, there was substantial competent evidence to support the trial court's determination that Hurst was a holder in due course under K.S.A. 84-3-302.

The question remaining in this case is whether K.S.A. 84-3-302(d) authorized the trial court to reduce the award to Hurst (the holder in due course) when Hurst had paid the full consideration to Hernandez (the payee). This issue requires interpretation of K.S.A. 84-3-302(d). Interpretation of a statute presents a question of law over which an appellate court's review is unlimited. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When a statute is plain and unambiguous, a court does not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

K.S.A. 84-3-302(d) states:

"If, under K.S.A. 84-3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance."

Under its plain language, K.S.A. 84-3-302(d) applies to those situations where the consideration for an instrument has been partially performed. There appear to be no Kansas cases that involve the application of K.S.A. 84-3-302(d). Moreover, Hurst has not cited any cases from other jurisdictions that have applied K.S.A. 84-3-302(d). The Official UCC Comment, however, provide an illustration as to the type of situation to which subsection (d) applies:

"Case #5. Payee negotiates a $1,000 note to Holder who agrees to pay $900 for it. After paying $500, Holder learns that Payee defrauded Maker in the transaction giving rise to the note. Under subsection (d) Holder may assert rights as a holder in due course to the extent of $555.55 ($500 / $900 = .555 x $1,000 = $555.55). This formula rewards Holder with a ratable portion of the bargained for profit."

The Official UCC Comment clarifies that subsection (d) of K.S.A. 84-3-302 is applicable when there has been a partial performance of consideration for the instrument *by the holder in due course*. Such is not the case here. Hurst had completed its performance of consideration for the check when it gave Hernandez $4,720.69. There was no partial performance of consideration for the check by Hurst.

In determining that K.S.A. 84-3-302(d) applied to this case, the trial court incorrectly focused on Hernandez' partial performance (his defective work) of his job with Cactus. K.S.A. 84-3-302(d) does not cover partial performance by the payee. The Kansas Comment, 1996 to K.S.A. 84-3-302(d) makes clear that this subsection is limited to those situations where the holder in due course has partially paid the agreed upon consideration for the instrument:

"Subsection (d) clarifies the calculation of recovery where the claimant is a partial holder in due course because not all of the agreed upon consideration has been paid, and the defendant only has a defense. The holder can assert holder in due course status only to the extent of the actual performance of consideration, over the value of the agreed consideration times the face value of the instrument. Thus if the holder has paid $30 of an agreed consideration of $90 for an instrument with a face value of $100, the holder is a holder in due course to the extent of $33 (30/90 x $100). To preserve the obligor's defense, while still protecting the holder in due course, the holder's collection should be allocated against the portion of payment to which there is no defense. Thus, if the obligor had a defense to $80 of the payment above, the defense would protect payment only of $66, and the partial holder in due course would recover $33."

Here, because Hurst paid Hernandez the entire amount of the agreed upon consideration for the check, K.S.A. 84-3-302(d) does not apply. The issue of the quality of the work that Hernandez performed for Cactus does not affect Hurst's rights as a holder in due course. When Hurst discovered that Cactus had placed a stop payment order on the check, it had already paid Hernandez the full consideration for the check. As a result, Hurst was a holder for value in the full amount of the check. Because Hurst had paid all of the agreed upon consideration to Hernandez, it was entitled to recover the full amount of the check ($4,768.47) from Cactus. Accordingly, we reverse the trial court's judgment and remand the

case to the trial court with instructions to enter a judgment against Crawford and Cactus and in favor of Hurst for $4,768.47.

Reversed and remanded.